**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| VIRSEC SYSTEMS, INC. | |
| Plaintiff, | **Civil Action No. 1:26-cv-2934** |
| v. | |
| MICROSOFT CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

1. Plaintiff Virsec Systems, Inc. ("Virsec" or "Plaintiff") brings this patent infringement action against Defendant Microsoft Corporation ("Microsoft" or "Defendant").

2. Virsec is a pioneer in cybersecurity, particularly in the field of runtime application and workload protection. Its principal inventor, Satya Gupta, founded the company in June 2005 after realizing that established companies were approaching cybersecurity the wrong way. Mr. Gupta recognized that the industry needed new technology to provide real-time detection and prevention of memory corruption attacks that are used to compromise application workloads. Virsec's technology, which is now protected by over fifty United States patents, proved to be a major breakthrough and an essential tool in thwarting a new generation of cyber-security attacks via real-time detection and prevention.

3. For example, Virsec's TrustGuardian™ product, depicted below, provides persistent runtime protection to identify and prevent attacks.




4. Unlike conventional security tools that rely on signatures, heuristics, or behavioral analysis to detect threats after they have begun to execute, Virsec's patented innovations and products, such as TrustGuardian™, operate at the runtime level to map and enforce the expected execution behavior of protected software, automatically identifying and blocking unauthorized deviations as they occur and before any damage can be done.

5. Virsec's technology has been deployed to protect mission-critical infrastructure across both commercial and government environments, and the company has received significant investment and industry recognition for its contributions to advancing the state of the art in application-aware, runtime security. For example, in 2026, Virsec won the Best in SaaS Award for AI-Powered Application Security. The Asserted Patents, defined below, are directed at key aspects of Virsec's innovations.

6. Microsoft is familiar with Virsec and its groundbreaking technology. On information and belief, Microsoft had known for many years that security in Microsoft Windows was fundamentally flawed and unable to counteract a new generation of real-time cyber-security attacks. Microsoft faced an existential threat to its Windows business, the cornerstone to the entire company.

7. Recognizing the existential threat these attacks posed to its business, Microsoft connected with and expressed interest in Virsec beginning in late 2017. The parties exchanged numerous email messages and met multiple times. Satya Gupta, a named inventor on all Asserted Patents, was heavily involved in these meetings. On information and belief, Microsoft was interested in Virsec's technology as a potential solution to its security problems and even considered acquiring Virsec. Hoping to secure a working relationship with Microsoft, Virsec disclosed technical details to Microsoft regarding its patented technology.

8. On March 1, 2018, Virsec was surprised when Microsoft abruptly terminated all discussions. After meeting with Virsec and Mr. Gupta, Microsoft began rolling out Exploit Guard for Windows Server. On information and belief, many of the same Microsoft engineers who met with Virsec were also instrumental to Exploit Guard. On information and belief, Microsoft's motivation was never to collaborate with Virsec but, instead, to extract information from Virsec for their own product development efforts.

9. Virsec brings this lawsuit to address Microsoft's willful infringement.

## NATURE OF THE ACTION

10. This is a civil action for infringement of United States Patent Nos. 8,966,312 (the "'312 patent") and 10,331,888 (the "'888 patent") (collectively, the "Asserted Patents") under the patent laws of the United States, 35 U.S.C. § 1 et seq.

## THE PARTIES

11. Virsec is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 325 S. 1st Street, Suite 120, San Jose, CA 95113.

12. Defendant Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, WA 98052. Microsoft has been registered to do business in the State of Texas since March 13, 1995, and may be served with process via its registered agent: Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

**JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) and the patent laws of the United States, 35 U.S.C. § 1 et seq.

14. The Court has personal jurisdiction over Microsoft because Microsoft conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established minimum contacts with this forum state such that the exercise of jurisdiction over Microsoft would not offend traditional notions of fair play and substantial justice.

15. Additionally, or alternatively, the Court has personal jurisdiction over Microsoft because Microsoft has substantial, continuous, and systematic contacts with this State and the Western District of Texas such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. For example, Microsoft has committed and continues to commit acts of infringement in this District. Microsoft has made, used (including to protect their own devices), sold, offered for sale, imported into, developed, and tested infringing products in this District. Further, Microsoft has induced others to use infringing products by acts carried out by Microsoft's employees in this District, and end-users have used infringing products in this District. As such, jurisdiction is consistent with the principles of due process and the Texas Long Arm Statute Tex. Civ. Prac. & Rem. Code. §§ 17.041, et seq.

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because, Microsoft has regular and established physical places of business in this District and has committed acts of patent infringement in this District. For example, Microsoft maintains corporate offices in this District, including at 10900 Stonelake Boulevard, Suite 225, Austin, Texas, 78759 and Concord Park II, 401 East Sonterra Boulevard, Suite 300, San Antonio, Texas 78258. On information and belief, employees at these facilities use the Accused Products for their everyday work as well as test the Accused Products.

17. This District is home to Dell which is one of Microsoft's most significant customers for the Accused Products. Plaintiff anticipates seeking discovery from non-party Dell regarding at least its direct infringement through the use, selling, and offering to sell the Accused Products as well as cost savings and profits associated with using the patented technology in the Accused Products.

18. In addition, on information and belief, Microsoft has not disputed that venue is proper in this District in cases filed against it in this District. *See, e.g.*, *Panther Innovations v. Microsoft Corp.*, No. 6:20-cv-01071, Dkt. No. 14; *Exafer Ltd v. Microsoft Corp.*, No. 1:20-cv-00131, Dkt. No. 15; *WSOU Investments, LLC v. Microsoft Corp.*, No. 6:20-cv-00464, Dkt. No. 20; *Zeroclick, LLC v. Microsoft Corp.*, No. 1:20-cv-00272, Dkt. No. 14.

**THE ASSERTED PATENTS**

19. The '312 and '888 patents, entitled "System and Methods for Run Time Detection and Correction of Memory Corruption," stem from a common provisional patent application (No. 60/771,734) filed on February 9, 2006 and a non-provisional patent application (No. 11/673,541) filed on February 9, 2007. The '312 and '888 patents issued on February 24, 2015 and June 25,

2019, respectively. Copies of the ’312 and ’888 patents are attached to this Complaint as Exhibits 1-2.

20. At the time of the invention, and to this day, computing devices run multiple software applications concurrently, each assigned its own virtual memory. Multi-tasking, though essential for allowing end-users to use their computers productively, amplifies security concerns. Specifically, hackers can “corrupt” memory during execution — for example through buffer overflow, format-string, or heap-metadata attacks, or hijacking of pointers that control execution flow— causing the application to execute unintended, attacker-controlled instructions. The specification states that memory-corruption exploits accounted for more than half of the security vulnerabilities known at the time.

21. At the time, there were several countermeasures to these security vulnerabilities, but none were satisfactory. These included:

- Reactive, signature-based detection, as used in anti-virus software, depended on already knowing what a piece of malware looks like or how it behaves, and thus could not reliably catch novel (“zero-day”) exploits.
- Vendor patching involved the software vendor identifying security vulnerabilities and quickly pushing out patches to its user base. Unfortunately, this leaves a window of vulnerability between disclosure of a flaw and deployment of a fix, during which enterprise users either remain exposed or must take mission-critical systems offline to patch.
- Hardware-level memory-error correction schemes (e.g., Error Correction Code-based recovery of physically failed memory) are designed to recover from physical/hardware

memory failures, but cannot address memory corruption caused by malicious software manipulation at the application layer.

22. As a solution, the specification describes storing, ahead of run-time, information about the application's expected structure (e.g., stack sub-frames, addresses that legitimate calls/returns/jumps should target, address-table contents, heap metadata) and, in some embodiments, a backup/"shadow" copy of protected memory structures.

23. At run-time, the invention dynamically checks a defined set of "invariants" tied to specific attack vectors by comparing the current state of memory/registers against the previously captured or expected state. This system declares an application layer memory corruption when a checked invariant fails to match the expected/backup state, and may then report the event and notify a user, administrator, or recovery module.

24. Because detection is based on structural invariants (e.g., "does this return address match the one we saved before the call?") rather than on recognizing a specific virus's signature or behavior, the specification represents that the approach advantageously catches zero-day attacks, works with binary executables without requiring recompilation or on-disk modification, and is lightweight so as to run continuously in production.

25. The written description of the '312 and '888 patents, therefore, describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26. As an example, claim 1 of the '312 patent recites:

1. A method comprising:

detecting an application layer memory corruption of at least one portion of a control section of original memory by malicious code during run-time, where the application layer memory corruption affects execution flow of an application when otherwise left uncorrected, wherein detecting includes performing at least two different invariant checks at run-time, each invariant check including (a) capturing a state of one or more registers and at least one portion of a data segment of the control section prior to execution of a function call, (b) checking the state after the execution of the function call against the captured state and (c) declaring application layer memory corruption if the checked state and the captured state do not match; and

reporting the application layer memory corruption to a user.

27. Claim 1 of the ’888 patent recites:

1. A method comprising:

detecting an application layer memory corruption of at least one portion of a control section of memory by an address table attack, wherein detecting includes:

(a) capturing a shadow copy of an address table from the control section of memory;

(b) checking contents of the address table against the captured shadow copy following execution of a function call;

(c) if the checked contents and the captured shadow copy match, checking that the executed function call is present in the address table; and

(d) declaring the application layer memory corruption based on: (i) at least a portion of the checked contents and the captured shadow copy not matching, or (ii) the executed function call not being present in the address table; and

automatically detecting a security attack of a computer application based on the declared application layer memory corruption, and reporting the detected security attack to a user.

28. The asserted claims of the ’312 and ’888 patents are valid, enforceable, and currently in full force and effect. Virsec holds all rights, title, and interest in the ’312 and ’888 patents with full rights to enforce the same including pursuing recovery of royalties for past and future damages for infringement.

## CLAIMS FOR PATENT INFRINGEMENT

29. Microsoft designs, offers, sells, and uses the Windows 10, Windows 11, Windows Server operating systems, Windows 365, Azure Virtual Desktop, Microsoft Surface devices, and Microsoft Defender for Endpoint (MDE) (collectively, the "Accused Products").

30. The allegations provided below are exemplary and without prejudice to Virsec's infringement contentions with respect to the Accused Products. In providing these allegations, Virsec does not convey or imply any particular claim constructions or the precise scope of the claims. Virsec's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

31. As detailed below, each element of at least one claim of the Asserted Patents is literally present in the Accused Products. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

## COUNT I: Infringement of the '312 Patent

32. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

33. Microsoft has infringed and continues to infringe at least claim 1 of the '312 patent in violation of 35 U.S.C. § 271(a) by, among other things using the Accused Products in the United States, including in this District without the permission, consent, authorization, or license of Virsec. For example, Microsoft runs Windows 365 for end-users.

34. On information and belief, Microsoft also performs the claimed method in an infringing manner in the United States and in this District when testing the Accused Products and corresponding systems and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

35. The Accused Products meet all limitations of at least claim 1 of the ’312 patent. Exhibit 3, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 1 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

36. Virsec contends that each element of at least claim 1 is literally present in the Accused Products. If, as a result of the Court’s constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

37. Microsoft, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 1 of the ’312 patent by inducing third parties to use the Accused Products in the United States, and particularly in Texas. Through sales agreements with third-party distributors and customers, Microsoft is doing so with actual or constructive knowledge of the ’312 patent, knows or should know that the acts of the third-party customers will result in infringement of the ’312 patent, and has specific and actual intent to cause the third-party customers to infringe the ’312 patent.

38. Microsoft, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training its customers to use one or more of the Accused Products in a manner covered by at least claim 1 of the ’312 patent. For example, Microsoft provides instructions on how to configure the Accused Products to use certain accused features:

- https://learn.microsoft.com/en-us/windows-server/security/kernel-mode-hardware-stack-protection (Exhibit 4); and

- https://learn.microsoft.com/en-us/windows/security/operating-system-security/device-management/override-mitigation-options-for-app-related-security-policies (Exhibit 5).

39. Microsoft had knowledge of the ’312 patent, and its infringement thereof, at least as of May 28, 2015 when Microsoft cited U.S. Patent No. 8,510,596 (the “’596 patent”), the parent of the ’312 patent, during the prosecution of a Microsoft patent, U.S. Patent No. 9,928,105. Microsoft further had knowledge of the ’312 patent as of August 3, 2018 when it identified the ’596 patent to the Patent Office during the prosecution of U.S. Patent No. 10,191,747. Microsoft further had knowledge of the ’312 patent as a result of multiple meetings Microsoft held with Virsec in late 2017 and early 2018, including those with Virsec CTO and named inventor of the ’312 patent Satya Gupta. On information and belief, Microsoft investigated and uncovered the ’312 patent after meeting with Virsec and praising its technology.

40. To the extent that Microsoft did not have actual knowledge of the ’312 patent, on information and belief, Microsoft willfully blinded itself to such knowledge based on the facts in the preceding paragraph. On information and belief, based on its knowledge of Virsec and its patent portfolio, Microsoft subjectively believed that there was a high probability of pending or issued Virsec patents. Further, on information and belief, Microsoft took deliberate steps to avoid learning about such patents.

41. Microsoft has been, and currently is, contributorily infringing the ’312 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’312 patent, are known by Microsoft to be especially made or especially adapted for use in infringement of the ’312 patent, and are not staple articles of commerce or commodities suitable for substantial,

non-infringing use, including at least the Accused Products. Microsoft's actions contribute to the direct infringement of the '312 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

42. Microsoft's infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

43. Virsec has suffered and continues to suffer damage as a result of Microsoft's infringement of the '312 patent.

**COUNT II: Infringement of the '888 patent**

44. Virsec realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

45. Microsoft has infringed and continues to infringe at least claim 1 of the '888 patent in violation of 35 U.S.C. § 271(a) by, among other things using the Accused Products in the United States, including in this District, without the permission, consent, authorization, or license of Virsec. For example, Microsoft runs Windows 365 for end-users.

46. On information and belief, Microsoft also performs the claimed method in an infringing manner in the United States and in this District when testing the Accused Products and corresponding systems and/or when providing or administering services to third parties, customers, and partners using the Accused Products.

47. The Accused Products meet all limitations of at least claim 1 of the '888 patent. Exhibit 6, incorporated herein by reference, provides an exemplary element-by-element comparison of claim 1 against certain Accused Products, which Virsec provides without the benefit of information about the Accused Products obtained through discovery.

48. Virsec contends that each element of at least claim 1 is literally present in the Accused Products. If, as a result of the Court's constructions or other determinations, one or more claim elements are not literally present, Virsec contends that each such element is present under the doctrine of equivalents.

49. Microsoft, in violation of 35 U.S.C. § 271(b), has also indirectly infringed and is indirectly infringing at least claim 1 of the '888 patent by inducing third parties to use the Accused Products in the United States, and particularly in Texas. Through sales agreements with third-party distributors and customers, Microsoft is doing so with actual or constructive knowledge of the '888 patent, knows or should know that the acts of the third-party customers will result in infringement of the '888 patent, and has specific and actual intent to cause the third-party customers to infringe the '888 patent.

50. Microsoft, in violation of 35 U.S.C. § 271(b), actively instructs, encourages, and/or aids such infringement through various acts, including instructing and/or training its customers to use one or more of the Accused Products in a manner covered by at least claim 1 of the '888 patent. See ¶ 38 for exemplary Microsoft instructions for an infringing configuration.

51. Microsoft had knowledge of the '888 patent, and its infringement thereof, upon its issuance because on May 28, 2015, Microsoft cited the '596 patent, the grandparent of the '888 patent, during the prosecution of a Microsoft patent, U.S. Patent No. 9,928,105. Microsoft further had knowledge of the '888 patent as of its issuance because it identified the '596 patent to the Patent Office during the prosecution of U.S. Patent No. 10,191,747. Microsoft further had knowledge of the '888 patent as a result of multiple meetings Microsoft held with Virsec in late 2017 and early 2018, including those with Virsec CTO and named inventor of the '888 patent,

Satya Gupta. On information and belief, Microsoft investigated and uncovered the ’888 patent after meeting with Virsec and praising its technology.

52. To the extent that Microsoft did not have actual knowledge of the ’888 patent, on information and belief, Microsoft willfully blinded itself to such knowledge based on the facts in the preceding paragraph. On information and belief, based on its knowledge of Virsec and its patent portfolio, Microsoft subjectively believed that there was a high probability of pending or issued Virsec patents. Further, on information and belief, Microsoft took deliberate steps to avoid learning about such patents.

53. Microsoft has been, and currently is, contributorily infringing the ’888 patent, in violation of 35 U.S.C. § 271(c), by selling or offering to sell, in this judicial district and throughout the United States, components that embody a material part of the inventions described in the ’888 patent, are known by Microsoft to be especially made or especially adapted for use in infringement of the ’888 patent, and are not staple articles of commerce or commodities suitable for substantial, non-infringing use, including at least the Accused Products. Microsoft’s actions contribute to the direct infringement of the ’888 patent by others, including customers of the Accused Products, in violation of 35 U.S.C. § 271(c).

54. Microsoft’s infringement is willful, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284.

55. Virsec has suffered and continues to suffer damage as a result of Microsoft’s infringement of the ’888 patent.

## JURY DEMAND

56. Virsec demands a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Virsec respectfully prays for relief as follows:

a. Judgment that Microsoft is liable for direct infringement, and/or inducing the infringement, and/or contributing to the infringement of one or more claims of the Asserted Patents;

b. Compensatory damages in an amount according to proof, including lost profits, and in any event no less than a reasonable royalty;

c. A finding of willful infringement;

d. Increased damages under 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest;

f. Attorneys' fees and costs based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees and costs;

g. An accounting and/or supplemental damages for all damages incurred by Virsec from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment; and

h. Any further relief that the Court deems just and proper.

DATED: October 16, 2026

Respectfully submitted,

*/s/ James C. Yoon*

James C. Yoon (CA State Bar # 177155)
Ryan R. Smith (CA State Bar # 229323)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 493-9300
Fax No. (866) 974-9329
Email: jyoon@wsgr.com
Email: rsmith@wsgr.com

**ATTORNEYS FOR PLAINTIFF VIRSEC SYSTEMS, INC.**